UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                        Case No. 19-CR-8

CHRIS KUBIAK,

        Defendant.

## PLEA AGREEMENT

1.     The United States of America, by its attorneys, Matthew D. Krueger, United States Attorney for the Eastern District of Wisconsin, and Carol L. Kraft, Assistant United States Attorney, and the defendant, Chris Kubiak, individually and by attorney Jonathan A. LaVoy, pursuant to Rule 11 of the Federal Rules of Criminal Procedure, enter into the following plea agreement:

### CHARGES

2.     The defendant has been charged in a seven-count indictment, which alleges a fraud scheme in violation of Title 18, United States Code, Sections 1341 (mail fraud) and 1343 (wire fraud).

3.     The defendant has read and fully understands the charges contained in the indictment. He fully understands the nature and elements of the crimes with which he is charged, and those charges and the terms and conditions of the plea agreement have been fully explained to him by his attorney.

4.    The defendant voluntarily agrees to plead guilty to the fraud scheme and the execution alleged in count two as set forth below:

**THE GRAND JURY CHARGES:**

*1.    Beginning by at least May 2013 and continuing thereafter until August 2018, the exact dates being unknown to the grand jury, in the State and Eastern District of Wisconsin, and elsewhere,*

### *CHRIS KUBIAK*

*knowingly and with intent to defraud, devised and executed a scheme to defraud elderly investor and tax clients, including E.S., A.S., W.C., J.J., E.B. and R.B., and to obtain money from said clients by means of material false and fraudulent pretenses and representations ("the scheme"), which is more fully described below.*

*2.    As relevant to this indictment:*

    *(a)    Chris Kubiak was a resident of Milwaukee, Wisconsin.*

    *(b)    From February 1989 to July 2017, Kubiak was registered with Freedom Investors Corp., as a General Securities Representative (GRS) and worked from an office in Brookfield, Wisconsin.*

    *(c)    From July 17, 2017, until October 1, 2018, Kubiak was registered with Calton & Associates, Inc., as a GSR and an Investments Company and Variable Products Representative, and worked from an office in Brookfield, Wisconsin.*

    *(d)    From at least 2008 until October 2018, Kubiak also held himself out to be an authorized income tax return preparer.*

2

(e) During his employment with Freedom Investors Corp. and Calton and Associates, Inc., Kubiak assisted his clients with various types of investment transactions at companies offering Annuity, IRA, and Life Insurance products, including but not limited to, Fidelity, Voya, American Funds, and Jackson National Life Insurance Company.

(f) Acting as a tax return preparer, Kubiak also prepared federal and state income tax returns for a number of the same elderly clients for whom he served as a financial advisor.

The Scheme

3. Kubiak's scheme to defraud and obtain money by means of materially false and fraudulent pretenses and representations was essentially as follows:

(a) Kubiak contacted associates at various investment companies and arranged to have funds withdrawn from his clients' investment accounts at those companies.

(b) On some occasions, Kubiak falsely stated to the associate that he was in fact, the client calling to request a withdrawal from, or liquidation of, an account.

(c) On other occasions, Kubiak stated to the associate that he was the financial representative of the client and falsely stated that he was requesting a withdrawal or liquidation for the client.

(d) Kubiak directed the fraudulently withdrawn or liquidated funds to be remitted directly to the client, either in the form of a check

3

*mailed to the client's home address, or in the form of an Automated Clearing House (ACH) transfer to the client's checking account.*

  *(e) Kubiak falsely told the affected clients that the withdrawn funds represented legitimate payments such as distributions or monetary bonus incentives, and falsely represented that he would reinvest the funds for the client.*

  *(f) Kubiak then directed the clients to write personal checks payable to him. Sometimes he requested checks in the approximate amount of the withdrawn investment funds. Other times he requested blank checks, which he would later fill in with a monetary amount.*

  *(g) Instead of reinvesting the funds, as he had promised, Kubiak endorsed the clients' checks and negotiated them through his personal checking account at Guaranty Bank, usually taking a portion of the funds in cash and depositing the balance into his personal account.*

  *(h) Kubiak never invested any portion of the client funds as he had promised.*

  *(i) In addition to falsely soliciting checks for purported investment purposes, Kubiak sometimes asked clients to issue checks that he falsely represented were for income tax payments, but which he in fact deposited into his personal account at Guaranty Bank.*

4. *As a result of his scheme, Kubiak fraudulently obtained in excess of $370,000 from elderly clients, which he used for gambling and for personal expenses.*

4

## WIRE FRAUD COUNT

### COUNT TWO

**THE GRAND JURY FURTHER CHARGES:**

5. *On or about the date set forth below, in the State and Eastern District of Wisconsin and elsewhere,*

**CHRIS KUBIAK,**

*for the purpose of executing the above described scheme, did knowingly cause to be transmitted in interstate commerce by means of Automated Clearing House (ACH) wire, the fraudulent transfer of investor funds as follows:*

| Count | Date | Description of ACH wire transfer |
|---|---|---|
| Two | 11/13/15 | Funds in the amount of $4,998.75, withdrawn from a Fidelity investment account owned by E.S., wired from the bank account of Fidelity Investments at Bank of America in Henrico, Virginia, to the account of E.S. at Citizen's Bank in Mukwonago, Wisconsin. |

*All in violation of Title 18, United States Code, Section 1343.*

5. The defendant acknowledges, understands, and agrees that he is, in fact, guilty of the offense set forth in paragraph 4. The parties acknowledge and understand that if this case were to proceed to trial, the government would be able to prove the following facts beyond a reasonable doubt. The defendant admits that these facts are true and correct and establish his guilt beyond a reasonable doubt: Chris Kubiak was a financial advisor who originally worked as a Registered Representative/Broker through Freedom Investors Corp., and starting on or about July 17, 2017, after Freedom ceased doing business, through Calton & Associates, Inc. In his capacity as a financial advisor, Kubiak handled a variety of investment products including Annuities, IRAs and Life Insurance products offered by Fidelity, Voya, Prudential, American

5

Funds, and Jackson National Life Insurance Company, among others. Kubiak had no direct supervisory oversight, and although he shared an office in Brookfield, Wisconsin with another financial advisor, he did most of his business by visiting clients in their homes. Many of these clients were elderly. A number of them had relied on Kubiak's financial services for many years, and accordingly, they had grown to trust him. Some of these clients also relied upon Kubiak to prepare their yearly state and federal tax returns. Starting on a date in 2013, the exact date unknown, Kubiak began requesting that some of his elderly clients issue personal checks to him. He arranged, in advance, to have funds to cover these checks withdrawn from one of the client's investment accounts and remitted to the client, either by a check mailed directly to the client's home address, or by an interstate ACH transfer to the client's checking account. To make these arrangements, Kubiak personally contacted the various investment companies and either falsely represented that he was the investor, or truthfully represented that he was the investor's financial representative, but falsely represented that the investor wanted funds to be withdrawn or an account to be liquidated. When the clients received these funds, Kubiak falsely told them that these were distributions from their existing investments, or that the funds were incentive bonuses for new investments. He then asked them to write personal checks to him, which he promised to invest in new products. Instead of doing as he had promised, Kubiak used the client funds for his personal purposes. He endorsed their checks, often taking a small amount in cash before depositing the balance in his personal checking account.

In the execution of this scheme, between October May 2015 and a date in 2018, Kubiak arranged to have multiple separate withdrawals from E.S.'s Fidelity investment account wired to her checking account, in the manner set forth in Count Two of the indictment. In each case, the funds were wired by interstate ACH transfer, from Fidelity Investment's account at Bank of America in Henrico, Virginia, to E.S.'s checking account at Citizen's Bank in Mukwonago,

6

Wisconsin. Based on Kubiak's false representations that the funds represented legitimate disbursements that he would reinvest on her behalf, E.S. issued to Kubiak, personal checks totaling approximately $69,662.61.

In a similar fashion, between 2013 and 2018, Kubiak arranged withdrawals from the client accounts of A.S., and W.C., and for the interstate wiring or mailing of the withdrawn funds. As with E.S., after the funds had been disbursed, Kubiak falsely represented that he would reinvest them for the client, and would solicit a personal check in the approximate amount of the withdrawal. Additionally, Kubiak requested personal checks from J.J., which he falsely claimed were for investment purposes, and from R.B. and his wife E.B., which he falsely claimed were for tax purposes As the result of this scheme, between a date in 2013 and a date in 2018, Kubiak received fraud scheme proceeds from those clients as follows: approximately $12,517.39 from E.S.'s husband A.S.; approximately $151,337 from W.C; approximately $137,810 from J.J.; and approximately $8,650 from R. & E.B.

This information is provided for the purpose of setting forth a factual basis for the plea of guilty. It is not a full recitation of the defendant's knowledge of, or participation in this offense.

## PENALTIES

6.      The parties understand and agree that the offense to which the defendant will enter a plea of guilty carries the following maximum terms of imprisonment and fine: twenty years and $250,000. The count also carries a mandatory special assessment of $100 and up to three years of supervised release. The parties further recognize that a restitution order will be entered by the court. The parties' acknowledgments, understandings, and agreements with regard to restitution are set forth in paragraph 26 of this agreement.

7.      The defendant acknowledges, understands, and agrees that he has discussed the relevant statutes as well as the applicable sentencing guidelines with his attorney.

7

## DISMISSAL OF REMAINING COUNTS

8. The government agrees to move to dismiss counts 1, 3 and 4-7 of the indictment at the time of sentencing.

## ELEMENTS

9. The parties understand and agree that in order to sustain the charge of wire fraud in violation of 18 U.S.C. § 1343 as set forth in Count Two, the government must prove each of the following propositions beyond a reasonable doubt:

> <u>First,</u> the defendant knowingly participated in a scheme to defraud or obtain money or property by means of materially false pretenses, representations, or promises as described in the indictment;
>
> <u>Second,</u> the defendant did so knowingly and with intent to defraud; and
>
> <u>Third,</u> that for the purpose of carrying out the scheme or attempting to do so, the defendant used interstate wire communication or caused the use of interstate wire communication in the manner charged.

## SENTENCING PROVISIONS

10. The parties agree to waive the time limits in Fed. R. Crim. P. 32 relating to the presentence report, including that the presentence report be disclosed not less than 35 days before the sentencing hearing, in favor of a schedule for disclosure, and the filing of any objections, to be established by the court at the change of plea hearing.

11. The parties acknowledge, understand, and agree that any sentence imposed by the court will be pursuant to the Sentencing Reform Act, and that the court will give due regard to the Sentencing Guidelines when sentencing the defendant.

12. The parties acknowledge and understand that prior to sentencing the United States Probation Office will conduct its own investigation of the defendant's criminal history. The parties further acknowledge and understand that, at the time the defendant enters a guilty plea, the parties may not have full and complete information regarding the defendant's criminal

8

history. The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentencing court's determination of the defendant's criminal history.

## Sentencing Guidelines Calculations

13. The defendant acknowledges and understands that the sentencing guidelines recommendations contained in this agreement do not create any right to be sentenced within any particular sentence range, and that the court may impose a reasonable sentence above or below the guideline range. The parties further understand and agree that if the defendant has provided false, incomplete, or inaccurate information that affects the calculations, the government is not bound to make the recommendations contained in this agreement.

## Relevant Conduct

14. The parties acknowledge, understand, and agree that pursuant to Sentencing Guidelines Manual § 1B1.3, the sentencing judge may consider relevant conduct in calculating the sentencing guidelines range, even if the relevant conduct is not the subject of the offense to which the defendant is pleading guilty. In this case, the relevant conduct includes all of the defendant's conduct in furtherance of the scheme.

## Base Offense Level

15. The parties acknowledge and understand that the government will recommend to the sentencing court that the applicable base offense level for the offense charged in Count Two is 7 under Sentencing Guidelines Manual § 2B1.1(a)(1) and that the following adjustments are applicable: an upward adjustment of 12 under Sentencing Guidelines Manual § 2B1.1(b)(1)(G) based on a loss of more than $300,000; an upward adjustment of 2 under Sentencing Guidelines Manual § 3B1.3, based on the defendant's abuse of a position of private trust; an upward adjustment of 2 under Sentencing Guidelines Manual § 3A1.1(b)(1) based on the defendant's

9

selection of vulnerable victims; and an upward adjustment of 4 under Sentencing Guidelines Manual § 2B1.1(b)(20) based on the defendant's commission of this fraud while in the position of broker/dealer. Based on this, the government will recommend a total adjusted offense level of 27.

**Acceptance of Responsibility**

16. The government agrees to recommend a two-level decrease for acceptance of responsibility as authorized by Sentencing Guidelines Manual § 3E1.1(a), but only if the defendant exhibits conduct consistent with the acceptance of responsibility. The defendant acknowledges, understands, and agrees that conduct consistent with the acceptance of responsibility includes but is not limited to the defendant's voluntary identification and disclosure to the government of any and all actual or potential victims of the offense prior to sentencing. In addition, if the court determines at the time of sentencing that the defendant is entitled to the two-level reduction under § 3E1.1(a), the government agrees to make a motion recommending an additional one-level decrease as authorized by Sentencing Guidelines Manual § 3E1.1(b) because the defendant timely notified authorities of his intention to enter a plea of guilty.

**Sentencing Recommendations**

17. Both parties reserve the right to provide the district court and the probation office with all information that might be pertinent to the sentencing process, including but not limited to any and all conduct related to the offense as well as any and all matters that might constitute aggravating or mitigating sentencing factors.

18. Both parties reserve the right to make any recommendation regarding any other matters not specifically addressed by this agreement.

19. The government agrees to recommend a sentence within the applicable sentencing guideline range, as determined by the court.

### Court's Determinations at Sentencing

20. The parties acknowledge, understand, and agree that neither the sentencing court nor the United States Probation Office is a party to or bound by this agreement. The United States Probation Office will make its own recommendations to the sentencing court. The sentencing court will make its own determinations regarding any and all issues relating to the imposition of sentence and may impose any sentence authorized by law up to the maximum penalties set forth in paragraph 6 above. The parties further understand that the sentencing court will be guided by the sentencing guidelines but will not be bound by the sentencing guidelines and may impose a reasonable sentence above or below the calculated guideline range.

21. The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentence imposed by the court.

### FINANCIAL MATTERS

22. The defendant acknowledges and understands that any and all financial obligations imposed by the sentencing court are due and payable in full upon entry of the judgment of conviction. The defendant further understands that any payment schedule imposed by the sentencing court shall be the minimum the defendant is expected to pay and that the government's collection of any and all court imposed financial obligations is not limited to the payment schedule. The defendant agrees not to request any delay or stay in payment of any and all financial obligations. If the defendant is incarcerated, the defendant agrees to participate in the Bureau of Prisons' Inmate Financial Responsibility Program, regardless of whether the court specifically directs participation or imposes a schedule of payments.

11

23. The defendant agrees to provide to the Financial Litigation Unit (FLU) of the United States Attorney's Office, at least 30 days before sentencing, and also upon request of the FLU during any period of probation or supervised release imposed by the court, a complete and sworn financial statement on a form provided by FLU and any documentation required by the form. The defendant further agrees, upon request of FLU whether made before or after sentencing, to promptly: cooperate in the identification of assets in which the defendant has an interest, cooperate in the liquidation of any such assets, and participate in an asset deposition.

## Fine

24. The parties agree to recommend to the sentencing court that no fine be imposed against the defendant.

## Special Assessment

25. The defendant agrees to pay the special assessment in the amount of $100 prior to or at the time of sentencing.

## Restitution

26. The defendant agrees to pay restitution as ordered by the court. The parties acknowledge and understand that based on the facts now known, the total restitution amount, due to A &E. S, W.C., J.J. and R. & E. B., the victims of the scheme, is approximately $379,977, and that the final amount will be calculated by the government and the probation department prior to sentencing. The parties further understand and agree that in accordance with 18 U.S.C. § 3664(j)(1), if any of the victims receive compensation from insurance or any other source with respect to their loss, the court will order that restitution be paid to the insurer or other person or entity that provided that compensation. The parties further understand that the restitution order shall specify that all restitution to victims required by the order will be paid to the victims before any restitution is paid to an insurer or other entity who has provided compensation. The

defendant understands that because restitution for the offense is mandatory, the amount of restitution shall be imposed by the court regardless of the defendant's financial resources. The defendant agrees to cooperate in efforts to collect the restitution obligation. The defendant understands that imposition or payment of restitution will not restrict or preclude the filing of any civil suit or administrative action.

### Forfeiture

27. The defendant agrees to the entry of a preliminary order of forfeiture, before sentencing, imposing a money judgment of forfeiture in the amount of $379,977.

28. The defendant acknowledges and understands that the government may seek to seize and forfeit property in which the defendant has an interest, including property not identified in this agreement, in order to satisfy the money judgment of forfeiture.

29. The United States Attorney's Office for the Eastern District of Wisconsin agrees to seek Department of Justice approval to have the net proceeds of any property forfeited in connection with this case applied to restitution. Net proceeds shall be calculated as the gross proceeds of the sale or disposition of any forfeited property less storage costs and costs of sale.

### DEFENDANT'S WAIVER OF RIGHTS

30. In entering this agreement, the defendant acknowledges and understands that he surrenders any claims he may have raised in any pretrial motion, as well as certain rights which include the following:

    a. If the defendant persisted in a plea of not guilty to the charges against him, he would be entitled to a speedy and public trial by a court or jury. The defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, the defendant, the government and the judge all must agree that the trial be conducted by the judge without a jury.

    b. If the trial is a jury trial, the jury would be composed of twelve citizens selected at random. The defendant and his attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual

13

Case 2:19-cr-00008-PP    Filed 05/08/19    Page 13 of 18    Document 13

        bias or other disqualification is shown, or without cause by exercising peremptory challenges. The jury would have to agree unanimously before it could return a verdict of guilty. The court would instruct the jury that the defendant is presumed innocent until such time, if ever, as the government establishes guilt by competent evidence to the satisfaction of the jury beyond a reasonable doubt.

    c.    If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all of the evidence, whether or not he was persuaded of defendant's guilt beyond a reasonable doubt.

    d.    At such trial, whether by a judge or a jury, the government would be required to present witnesses and other evidence against the defendant. The defendant would be able to confront witnesses upon whose testimony the government is relying to obtain a conviction and he would have the right to cross-examine those witnesses. In turn, the defendant could, but is not obligated to, present witnesses and other evidence on his own behalf. The defendant would be entitled to compulsory process to call witnesses.

    e.    At such trial, defendant would have a privilege against self-incrimination so that he could decline to testify and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify on his own behalf.

31.    The defendant acknowledges and understands that by pleading guilty he is waiving all the rights set forth above. The defendant further acknowledges the fact that his attorney has explained these rights to him and the consequences of his waiver of these rights. The defendant further acknowledges that as a part of the guilty plea hearing, the court may question the defendant under oath, on the record, and in the presence of counsel about the offense to which the defendant intends to plead guilty. The defendant further understands that the defendant's answers may later be used against the defendant in a prosecution for perjury or false statement.

32.    The defendant acknowledges and understands that he will be adjudicated guilty of the offense to which he will plead guilty and thereby may be deprived of certain rights, including but not limited to the right to vote, to hold public office, to serve on a jury, to possess firearms, and to be employed by a federally insured financial institution.

14

Case 2:19-cr-00008-PP   Filed 05/08/19   Page 14 of 18   Document 13

33. The defendant knowingly and voluntarily waives all claims he may have based upon the statute of limitations, the Speedy Trial Act, and the speedy trial provisions of the Sixth Amendment. The defendant agrees that any delay between the filing of this agreement and the entry of the defendant's guilty plea pursuant to this agreement constitutes excludable time under the Speedy Trial Act.

### Further Civil or Administrative Action

34. The defendant acknowledges, understands, and agrees that the defendant has discussed with his attorney and understands that nothing contained in this agreement, including any attachment, is meant to limit the rights and authority of the United States of America or any other state or local government to take further civil, administrative, or regulatory action against the defendant, including but not limited to any listing and debarment proceedings to restrict rights and opportunities of the defendant to contract with or receive assistance, loans, and benefits from United States government agencies.

### GENERAL MATTERS

35. The parties acknowledge, understand, and agree that this agreement does not require the government to take, or not to take, any particular position in any post-conviction motion or appeal.

36. The parties acknowledge, understand, and agree that this plea agreement will be filed and become part of the public record in this case.

37. The parties acknowledge, understand, and agree that the United States Attorney's office is free to notify any local, state, or federal agency of the defendant's conviction.

38. The defendant understands that pursuant to the Victim and Witness Protection Act, the Justice for All Act, and regulations promulgated thereto by the Attorney General of the United States, the victim of a crime may make a statement describing the impact of the offense

15

on the victim and further may make a recommendation regarding the sentence to be imposed. The defendant acknowledges and understands that comments and recommendations by a victim may be different from those of the parties to this agreement.

### Further Action by Internal Revenue Service

39. Nothing in this agreement shall be construed to limit the Internal Revenue Service in discharging its responsibilities in connection with the collection of any additional tax, interest, and penalties due from the defendant as a result of the defendant's conduct giving rise to the charges alleged in the indictment.

### EFFECT OF DEFENDANT'S BREACH OF PLEA AGREEMENT

40. The defendant acknowledges and understands if he violates any term of this agreement at any time, engages in any further criminal activity prior to sentencing, or fails to appear for sentencing, this agreement shall become null and void at the discretion of the government. The defendant further acknowledges and understands that the government's agreement to dismiss any charge is conditional upon final resolution of this matter. If this plea agreement is revoked or if the defendant's conviction ultimately is overturned, then the government retains the right to reinstate any and all dismissed charges and to file any and all charges that were not filed because of this agreement. The defendant hereby knowingly and voluntarily waives any defense based on the applicable statute of limitations for any charges filed against the defendant as a result of his breach of this agreement. The defendant understands, however, that the government may elect to proceed with the guilty plea and sentencing. If the defendant and his attorney have signed a proffer letter in connection with this case, then the defendant further acknowledges and understands that he continues to be subject to the terms of the proffer letter.

## VOLUNTARINESS OF DEFENDANT'S PLEA

41. The defendant acknowledges, understands, and agrees that he will plead guilty freely and voluntarily because he is in fact guilty. The defendant further acknowledges and agrees that no threats, promises, representations, or other inducements have been made, nor agreements reached, other than those set forth in this agreement, to induce the defendant to plead guilty.

# ACKNOWLEDGMENTS

I am the defendant. I am entering into this plea agreement freely and voluntarily. I am not now on or under the influence of any drug, medication, alcohol, or other intoxicant or depressant, whether or not prescribed by a physician, which would impair my ability to understand the terms and conditions of this agreement. My attorney has reviewed every part of this agreement with me and has advised me of the implications of the sentencing guidelines. I have discussed all aspects of this case with my attorney and I am satisfied that my attorney has provided effective assistance of counsel.

Date: 5/8/19

CHRIS KUBIAK
Defendant

I am the defendant's attorney. I carefully have reviewed every part of this agreement with the defendant. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

Date: 5/8/19

JONATHAN A. LAVOY
Attorney for Defendant

For the United States of America:

Date: 5/8/19

MATTHEW D. KRUEGER
United States Attorney

Date: 5/8/19

CAROL L. KRAFT
Assistant United States Attorney

18